**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re<br><br>DENNIS M. BARTEL,<br><br>                      Debtor<br><br>COMMONWEALTH OF MASSACHUSETTS,<br><br>                      Plaintiff<br><br>v.<br><br>DENNIS M. BARTEL,<br><br>                      Defendant | Chapter 7<br>Case No. 05-13134-JR<br><br><br><br><br><br><br>Adversary Proceeding<br>No. 07-1019 |

**MEMORANDUM OF DECISION AND ORDER ON**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

By its complaint in this adversary proceeding, the Commonwealth of Massachusetts asserts objections to discharge under five subsections of 11 U.S.C. § 727(a) and one count asking that certain debts—those allegedly owed by the debtor to certain consumer creditors on whose behalf the Commonwealth is prosecuting this count—be excepted from discharge. The adversary proceeding is before the court on the Commonwealth's motion for summary judgment as to certain of its objections to discharge. The debtor, Dennis Bartel, opposes the motion. For the reasons set forth below, the court will deny summary judgment.

**PROCEDURAL HISTORY**

Dennis Bartel filed a petition for relief under chapter 13 of the Bankruptcy Code on April 13, 2005. He subsequently converted his case to one under chapter 11. On April 4, 2006, the

court converted his case to one under Chapter 7.  The Commonwealth of Massachusetts filed the complaint commencing this adversary proceeding on January 15, 2007 and amended it with leave of court on May 9, 2007.

The complaint asserts objections to discharge in five counts, one for each of the five subsections of 11 U.S.C. § 727(a) under which they are variously brought.  Each count, however, contains multiple causes of action under the subsection for that count.  Bartel's answer disputes first the Commonwealth's status as a creditor and then the factual allegations of each count.

The Commonwealth filed its motion for summary judgment on September 23, 2008.  In support of its motion, the Commonwealth filed the affidavit of Attorney Scott Schaeffer, including eleven exhibits.  Bartel filed an objection to the motion and, in support of it, only a Superior Court sentencing memorandum.  However, this motion for summary judgment was filed and argued in conjunction with a parallel motion for summary judgment, raising similar factual issues, in Adversary Proceeding No. 07-1018.  Bartel submitted an affidavit and other evidence in opposition to that motion, with the evident intent that such materials would be considered in conjunction with the present motion; the court will so consider them.  The court heard this motion on October 21, 2008, and took the matter under advisement.

**SUMMARY JUDGMENT STANDARD**

A party is entitled to summary judgment only upon a showing that there is no genuine issue of material fact and that, on the uncontroverted facts, the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).  Where, as here, the burden of proof at trial would fall on the party seeking summary judgment, that party must support its motion with evidence—in the form of affidavits, admissions, depositions, answers to interrogatories, and the like—as to each

2

essential element of its cause of action. The evidence must be such as would permit the movant at trial to withstand a motion for directed verdict under FED. R. CIV. P. 50(a). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the motion is properly supported, the burden shifts to the adverse party to submit evidence demonstrating the existence of a genuine issue as to at least one material fact. If the adverse party does not so respond, "summary judgment, if appropriate, shall be entered against the adverse party." FED. R. CIV. P. 56(e); *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989).

In order to prevail on its counts under § 727(a)(2) and (a)(4)(A), the Commonwealth will have to establish scienter and fraudulent intent, and, as is usually necessary, it will seek to do so by inference from circumstantial evidence. When faced with an attempt to establish scienter or specific intent on summary judgment by inference, litigants and courts should keep ever before them a basic rule of summary judgment practice—that "all reasonable inferences from the facts must be drawn in the manner most favorable to the nonmovant," *In re Varrasso*, 37 F.3d 760, 763 (1st Cir. 1994)—and the consequent guidance from *Varrasso*: "[S]ummary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record." *Id*.

> Undisputed facts do not always point unerringly to a single, inevitable conclusion. And when facts, though undisputed, are capable of supporting conflicting yet plausible inferences—inferences that are capable of leading a rational factfinder to different outcomes in a litigated matter depending on which of them the factfinder draws—then the choice between those inferences is not for the court on summary judgment.

*Id*. Despite these strictures, state-of-mind issues *can* be resolved at the summary judgment stage, provided the circumstantial evidence "is sufficiently potent to establish fraudulent intent beyond hope of contradiction." *Id*. at 764; *In re Marrama*, 445 F.3d 518, 522 (1st Cir. 2006) ("Evidence

3

of fraud is conclusive enough to support summary judgment in a § 727(a)(2)(A) action when it yields no plausible conclusion but that the debtor's intent was fraudulent."). Still, "courts must be exceptionally cautious in granting *brevis* disposition in such cases . . . especially where . . . the movant bears the devoir of persuasion as to the nonmovant's state of mind." *Id*. at 764.

**STANDING**

Bartel first challenges the Commonwealth's standing to object to discharge at all, arguing that the Commonwealth has not alleged facts from which the court could infer that Bartel owes a debt to the Commonwealth. Standing to object to discharge is limited by statute to the trustee, the United States trustee, and creditors. 11 U.S.C. § 727(c)(1) ("The trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this section."). As the Commonwealth is neither the trustee nor the United States trustee, its standing to object to discharge depends on its being a creditor. In order to prevail, Bartel argues, the Commonwealth must therefore establish that it is a creditor, and its failure to do so requires denial of summary judgment.

The Commonwealth did not anticipate and therefore did not address the standing issue in its motion for summary judgment. Bartel raised the issue in his opposition to the motion, a pleading to which no response was required or filed. Although the court questioned Bartel's counsel at length on the issue at the summary judgment hearing, the Commonwealth offered nothing with respect to its standing at the hearing. Consequently, the Commonwealth has adduced no evidence or argument on the issue.

At the hearing on the motion for summary judgment, however, the court examined the schedules of creditors that Bartel filed with his petition in this bankruptcy case. On Schedule E,

4

the schedule of creditors holding unsecured priority claims, Bartel listed a debt to the Massachusetts Department of Revenue for payroll taxes for 2002 and 2003 in the amount of $24,740. Bartel signed the schedules under penalty of perjury as "true and correct to the best of my knowledge, information, and belief," and he indicated that the debt in question was neither disputed, contingent, nor unliquidated. Bartel has never amended this schedule; nor has he offered testimony controverting it.

At this time the uncontroverted evidence would support the conclusion that the Commonwealth is a creditor in the case and, as such, has standing to object to discharge. However, because Bartel was first faced with this evidence of standing only at the hearing on summary judgment, the court makes no final determination on the issue at this time. The standing issue will be left for trial.

## DISCUSSION

**Count I:  Transfers of Assets, § 727(a)(2)**

In Count I of its complaint, the Commonwealth objects to Bartel's discharge under 11 U.S.C. § 727(a)(2), arguing (i) that Bartel made both prepetition and postpetition transfers from his personal bank account at the Taunton Federal Credit Union with intent to hinder, delay, or defraud creditors or an officer of the estate and (ii) that he concealed the transfers with intent to hinder, delay, or defraud creditors or an officer of the estate. The Commonwealth relies on two sets of transfers. The first consists of nineteen transfers, totaling $19,178.00, on diverse dates from April 27, 2004, through July 20, 2005, to a Lynn DesLauriers. The second set consists of three transfers totaling $59,379.00 that Bartel made on April 21, 2005, eight days after his bankruptcy filing:  a transfer of $51,749 to DB & Sons; a transfer of $4,000 to Bruce Raphael,

5

attorney for DB & Sons Builders, Inc.; and a transfer of $3,900 to Suburban Insulation for DB & Sons Builders, Inc.

In order to establish that the debtor should be denied a discharge under § 727(a)(2), a creditor must prove that "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—(A) property of the debtor within, within one year before the date of filing of the petition; or (B) property of the estate, after the date of the filing of the petition."  11 U.S.C. § 727(a)(2).  Here, the Commonwealth alleges only that Bartel transferred assets, not that he removed, destroyed, mutilated, or concealed them, or permitted them to be transferred, removed, destroyed, mutilated, or concealed.  The Commonwealth also seems to allege, as an operative fact under this section, that Bartel concealed or failed to disclose the transfers of these assets; but concealment of transfers (as opposed to concealment of the assets themselves) is not a basis for denial of discharge under this subsection.  Also, the Commonwealth has not identified "an officer of the estate charged with custody of property under this title"[1]; therefore I understand the Commonwealth to be alleging only that Bartel acted with intent to hinder, delay, or defraud one or more creditors.

The Court must deny summary judgment as to this count because there exist genuine issues of material fact as to at least two issues.  First, Bartel has testified that the monies transferred in the second set of transfers at issue—those made to or for the benefit of DB & Sons Builders, Inc.—were made with funds that did not belong to him:  he testified that the funds had

---

[1] All the postpetition transfers occurred on dates when this case was either in chapter 13 or in chapter 11.  The chapter 13 trustee is not charged with custody of property of the estate; and no trustee was appointed during the chapter 11 phase of the case.

6

been loaned to DB & Sons Builders, Inc., but that the lender had mistakenly made the check payable to him personally; to rectify the error, he deposited the funds and then transferred them by further checks to the corporation and its creditors.  As to these transfers there exists a genuine issue of material fact as to whether the transferred funds were the debtor's or the estate's.

Second, when construed in the light most favorable to the non-moving party, the evidence does not compel a finding that Bartel made the transfers with the requisite intent to hinder, delay, or defraud a creditor.  There is very little evidence at all of fraudulent intent.  The Commonwealth cites no evidence of insolvency, of particular creditor action or pressure, or of how these particular transfers might have served to hinder, delay, or defraud a creditor.  The court cannot simply assume that an unexplained transfer is by default sinister.  A trier of fact could reasonably conclude that the Commonwealth has not satisfied its burden of proof on this issue; I do not say that the evidence compels that conclusion, only that such a conclusion is permitted, and, as it is permitted, that summary judgment must be denied.

**Count II:  False Oath, § 727(a)(4)(A)**

In Count II, the Commonwealth alleges that Bartel knowingly and fraudulently made eight distinct false statements[2] under oath in his Statement of Financial Affairs ("SOFA") and in a Rule 2004 examination conducted by the Commonwealth and therefore that he should be

---

[2] In Count II, the Commonwealth identifies at least eight distinct false statements, each of which might constitute a separate basis for denial of discharge under § 727(A)(4)(A).  However, in order to demonstrate the falsity of some of these statements, the Commonwealth also cites in Count II other contradictory statements by Bartel, the result being that it is often difficult to determine whether a particular statement is set forth as a cause of action or merely as evidence with respect to another false statement.  This same difficulty greatly plagues the motion for summary judgment, making it difficult for the court—and presumably also the debtor—to determine which statements the Commonwealth is proceeding on.

7

denied a discharge under § 727(a)(4)(A).  That subsection requires denial of discharge if "the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account."  In its motion for summary judgment, the Commonwealth seeks denial of discharge on the basis of five distinct false statements.  The court must deny the motion as to each.

In the first statement, made in answer to question (1) on his SOFA, Bartel stated that he had no income for 2003, 2004, and 2005 (through the date of the petition).  This statement was false, the Commonwealth alleges, because Bartel had income of $72,325 in 2003 and $45,980 in 2004 from his own corporation, New Dimensions Construction LLC.  The court denies summary judgment as to this statement because Bartel, in the affidavit he filed in opposition to summary judgment, stated that he prepared his schedules and SOFA with the assistance of his attorney, that he believed at the time that they were true and correct, based on his attorney's advice and instructions, and that any errors therein were unintentional and not made with knowledge that they were false.  This statement, though thin and uncorroborated, is nonetheless evidence that creates a genuine issue of material fact as to the scienter and fraudulent intent requirements of § 727(A)(4)(A).

The second statement on which the Commonwealth relies is Bartel's failure to list certain transfers from himself to Lynn and Rene DesLauriers[3] anywhere in his SOFA.  The court will deny summary judgment as to this statement on several grounds.  First, this statement is not among the statements identified in Count II; a cause of action under § 727(a)(4)(A) is in the nature of fraud and must be pleaded with particularity.  Second, the motion for summary

---

[3] Rene DesLauriers appears to be the husband of Lynn and a friend and business partner of Bartel.  Although the Commonwealth alleges that Bartel failed to list transfers to both Rene and Lynn, it has adduced no evidence of transfers to Rene.  The transfers in evidence are to Lynn.

judgment does not indicate where in the SOFA the Commonwealth believes the transfers in question should have been listed; without citation of a specific question, the Court cannot determine whether the omission of these transfers amounts to a false statement.  Third, as specified in the previous paragraph, Bartel's affidavit creates a genuine issue of material fact on the scienter and fraudulent intent requirements as to this statement.

The remaining statements on which the Commonwealth relies are statements that Bartel made during his Rule 2004 examination.  As to each of these, the court will deny summary judgment because of genuine issues of material fact as to scienter and fraudulent intent.  Bartel averred in his affidavit that he answered all questions at the 2004 examination truthfully, to the best of his knowledge and belief.  More importantly, even a cursory reading of the relevant passages shows that inconsistencies in testimony can plausibly (if not necessarily) be explained by confusion, forgetfulness, misunderstanding, and miscommunication, and therefore that the record does not compel findings of knowledge of falsity and fraudulent intent.

**Count III: Failure to Maintain Books and Records, § 727(a)(5)**

In Count III, the Commonwealth asks that Bartel be denied a discharge under § 727(a)(3) on the basis that Bartel and his wife discarded records of their personal bank account and that Bartel failed to produce complete records of his business bank accounts and of the business of DB & Sons Builders, Inc.  In its motion for summary judgment, the Commonwealth seeks summary judgment on each of these bases, and also because Bartel and his wife discarded their personal credit card statements.

Section 727(a)(3) states that

> (a)  The court shall grant the debtor a discharge, unless–
>     (3)  the debtor has concealed, destroyed, mutilated,

9

> falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). The initial burden is on the party objecting to discharge to prove (i) that the debtor "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information" and (ii) that the recorded information was information "from which the debtor's financial condition or business transactions might be ascertained." The plaintiff need not establish specific intent of any kind. If the party objecting to discharge proves these two requirements, the burden then shifts to the debtor to prove that "such act or failure to act was justified under all of the circumstances of the case." *Campana v. Pilavis (In re Pilavis)*, 244 B.R. 173, 176 (BAP 1st Cir. 2000).

The court will deny the motion for summary judgment as to this count for the following reasons. First, as to the business records, there is no evidence that the debtor discarded or failed to maintain such records. Rather, there exists evidence that the debtor retained a great volume of business records and that these were seized by the Commonwealth in a criminal investigation early in this bankruptcy case, resulting in the documents' becoming unavailable to numerous interested parties in this case for a considerable time.

Second, as to the credit card bills, these are not a basis pleaded in the complaint. Moreover, Bartel testified that he had no credit cards in his name during the years preceding the bankruptcy filing.

This leaves only the Bartels' personal bank account. The Commonwealth has adduced uncontroverted evidence that Bartel's wife routinely discarded the bank statements after she reconciled the account. There is no evidence that other checking records were discarded. The

information contained in bank statements from personal checking accounts is usually retained by the bank in question and can often be obtained directly from the bank. In fact, the Commonwealth itself did obtain the same records by subpoena in this case. Especially where the evidence suggests that the discarding of these records was routine and (by plausible inference) not intended to hinder or delay creditors, the availability of the discarded records creates a genuine issue of material fact as to whether their discarding "was justified under all of the circumstances of the case." *Lassman v. Keefe (In re Keefe)*, 380 B.R. 116, 121 (Bankr. D. Mass. 2007) ("If the records could be recovered easily and without much cost, perhaps their destruction would be deemed justified in the sense that the destruction was inconsequential.").

**Count IV: Failure to Explain Loss of Assets, § 727(a)(5)**

In Count V, the Commonwealth asks that Bartel be denied a discharge under § 727(a)(5) because he has failed to explain the loss of his assets or the deficiency of his assets to meet his liabilities. In support of summary judgment, the Commonwealth cites no particular assets that have been lost other than Bartel's salary of $72,325 in 2003 and $45,980 in 2004; nor does the Commonwealth specify the liabilities that the assets are allegedly deficient to meet.

Section 727(a)(5) requires denial of discharge where a debtor "has failed to explain satisfactorily, before determination of denial or discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). This subsection creates two possible causes of action: either a loss of assets or a deficiency of assets to meet liabilities. With respect to a loss of assets, the plaintiff bears the burden of proving the loss of an asset previously owned; the burden then shifts to the debtor to explain the loss satisfactorily. *In re Brien*, 208 B.R. 255, 258 (BAP 1st Cir. 1997). The court will deny summary judgment as to

11

the loss of the debtor's salary from the years 2003 and 2004. Bartel's schedules indicate that he is supporting a family of five, including three minor children, and that his wife had no income of her own. Salary totaling $118,000 will likely and ordinarily be fully consumed by a family of five on ordinary family and household expenditures over a period of 27 months, even without the financial strains from the implosion of Bartel's construction business in the years in question.

The Commonwealth also alleges that Bartel has not satisfactorily explained the deficiency of his assets to meet his liabilities. The initial burden here is on the Commonwealth to prove that the debtor's assets are insufficient to meet his liabilities. The Commonwealth has cited no evidence of the extent or nature of the debtor's liabilities. Moreover, Bartel did offer an explanation for the insufficiency of his assets to meet his liabilities in the disclosure statement he filed in the Chapter 11 portion of this case. This explanation appears to create at least a genuine issue of material fact on the issue.

**ORDER**

For the reasons set forth above, the Commonwealth's Motion for Summary Judgment is hereby denied.

Date: December 23, 2008

Joel B. Rosenthal
United States Bankruptcy Judge