## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE | : | CHAPTER 7 |
| DENNIS M. BARTEL, | : | |
| <u>DEBTOR</u> | : | CASE NO.05-13134-JBR |
| COMMONWEALTH OF MASSACHUSETTS, | : | |
| PLAINTIFF, | : | |
| v. | : | AP. NO. 07-1019-JBR |
| DENNIS M. BARTEL, | : | |
| DEFENDANT. | : | |

## MEMORANDUM OF DECISION REGARDING DEBTOR'S SUGGESTION OF LACK OF STANDING

In the above Adversary Proceeding the Commonwealth of Massachusetts, by and through the Massachusetts Attorney General (the "Commonwealth"), seeks to deny the Debtor, who is currently incarcerated following his conviction for larceny as a result of actions in connection with the operation of a residential contacting and construction business, his discharge pursuant to 11 U.S.C. § 727(a)(2), (3), (4)(A), (5), and/or(6)(A) and (B) or alternatively, to except certain debts from discharge pursuant to 11 U.S.C. § 523(a)(2)(a), (6), and/or (7).[1] In its Amended Complaint the Commonwealth asserts that it intends to file a complaint in Suffolk Superior Court to obtain a permanent injunction against the Debtor and seek other relief, including restitution for injured consumers, and wishes to preserve its right to pursue such an action. Complaint at ¶ 46 and ¶ 50. The Commonwealth also filed an estimated proof of claim for

---

[1] The above Adversary Proceeding has been consolidated for trial with Adversary Proceeding No. 07-1018-JBR, styled *Brian A. Kenny and Alexandra Accardi v. Dennis M. Bartel*.

$911,265, including $811,265 for restitution to injured consumers and $100,000 in civil penalties, based on the Debtor's alleged violations of M.G.L. ch 93A, § 4.

The Commonwealth sought summary judgment [#73], which the Debtor opposed [#87] and for the first time raised the issue of the Commonwealth's standing to object to discharge on the grounds that the Commonwealth did not allege any debt was owed to it. The Court denied the Commonwealth's summary judgment motion but noted that the Debtor scheduled a debt of $24,740 owed to the Massachusetts Department of Revenue for payroll taxes for 2002 and 2003. Although the Court made no final determination with respect to standing, it observed that the Commonwealth appeared to be a creditor with standing to object to discharge. Subsequently the Court permitted the parties to file briefs addressing the standing issue. Those memoranda [#106 and # 108] have now been filed.

The Court concludes that the Commonwealth has standing for several reasons. First, standing is given to the Attorney General in cases such as the instant one under the doctrine of *parens patriae*. As the First Circuit explained in *Estados Unidos Mexicanos v. DeCoster,* 229 F.3d 332, 335 -36 (1st Cir. 2000), the doctrine "creates an exception to normal rules of standing applied to private citizens in recognition of the special role that a State plays in pursuing its quasi-sovereign interests in the well-being of its populace." (Internal citation and quotations omitted). Its modern iteration of the doctrine comes from the Supreme Court's decision in *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 600, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982).

> In order to maintain [a parens patriae] action, the State must articulate an interest apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party. The State must express a quasi-sovereign interest. Although the articulation of such interests is a matter for case-by-case development--neither

>   an exhaustive formal definition nor a definitive list of qualifying interests can be presented in the abstract-- certain characteristics of such interests are so far evident. These characteristics fall into two general categories. First, a State has a quasi-sovereign interest in the health and well-being--both physical and economic--of its residents in general. Second, a State has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system.

*Id.* at 607, 102 S.Ct. 3260. Subsequently "courts and commentators have distilled the Court's analysis into two parts [:] ... an injury to a 'quasi-sovereign' interest, an interest apart from the interests of particular private parties ... [and the] injury [must be] to a 'substantial segment' of the population." *Commonwealth of Massachusetts v. Bull HN Information Systems, Inc.,* 16 F. Supp 2d 90, 96 (D. Mass. 1998). The Debtor urges that the Court adopt a third requirement, namely that the Commonwealth demonstrate the individuals could not obtain complete relief in private suits. The *Bull HN* court addressed this argument and observed that the third prong was articulated by the Second Circuit in *People by Abrams v. 11 Cornwell Co.*, 695 F.2d 34, 40 (2d Cir. 1982). This prong, however, was found to be "no more than another formulation of the general parens patriae standing consideration that the state be more than a nominal party in a private dispute." *Bull HN*, 16 F. Supp.2d at 101. It was not addressed, much less adopted, in *DeCoster* but this Court agrees with the district court that it is simply another way of expressing that the doctrine of *parens patriae* is not to be used to permit a state to stand as a representative plaintiff in purely private disputes.

The Debtor, however, misunderstands this requirement and argues that because the Commonwealth itself has not sustained an actual injury, it cannot satisfy the requirement that it stand as a representative of its injured residents. As the *DeCoster* court explained, however, '[a] State's quasi-sovereign interest is ...distinct from, for example, its sovereign interest in

3

protecting and maintaining its boundaries and its proprietary interest in owning land or conducting a business venture. *DeCoster*, 229 F.Ed. 336 n.3. Here the Commonwealth's interest in protecting the economic well-being of consumers and ensuring that those who conduct business within the state do not jeopardize that well-being is sufficient.

This case does not involve purely private disputes, however. It is undisputed that the Commonwealth has a quasi-sovereign interest in the well-being of its citizens, including their economic well-being. *Snapp,* 458 U.S. at 607, 102 S.Ct. 3260. The Commonwealth has an interest beyond that of each individual in ensuring that those who do business within this state comport with a basic level of fairness in all their dealings. It is beyond dispute that the Debtor has been convicted in connection with taking and dissipating funds from homeowners for residential construction projects never started or left unfinished. The Attorney General has asserted that she has received approximately 20 such complaints from consumers[2] and intends to seek file an action for injunctive relief and restitution, among other things, in Suffolk Superior Court. M.G.L. ch. 93A, § 4 clearly establishes the Attorney General's right to bring such actions.[3] This right applies even if a company has ceased its unfair practices. *Lowell Gas Co. v.*

---

[2]The Debtor concedes that the requisite numerosity is present in this case.

[3]M.G.L. ch. 93A, § 4 provides in relevant part:

Whenever the attorney general has reason to believe that any person is using or is about to use any method, act, or practice declared by section two to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the commonwealth against such person to restrain by temporary restraining order or preliminary or permanent injunction the use of such method, act or practice. The action may be brought ... in the superior court of Suffolk county with the consent of the parties or if the person has no place of business within the commonwealth.... Said court may issue temporary restraining orders or preliminary or permanent injunctions and make such other orders or judgments as may be necessary to restore to any person who has

*Attorney General*, 377 Mass. 37, 47, 385 N.E.2d 240, 247 (1979).  Similarly M.G.L. ch. 12, § 10 also invests the Attorney General with authority to take note of violations of the law and take appropriate action.[4]  Nor does the Commonwealth had to have litigated those claims prior to the bankruptcy to qualify as a creditor with standing to object to discharge.  *In re Shumate*, 55 B.r. 489, 492 (Bankr. W.D. Va. 1985).

Moreover, although the Court does not believe that the Commonwealth must demonstrate that the relief sought could not be obtained by each of the approximately 20 homeowners who were allegedly harmed by the Debtor's actions, the Commonwealth notes the irony of the Debtor absconding with the homeowners' funds while ignoring the fact that many may not have the resources to commence and prosecute discharge or dischargeability objections.  His argument that only a few of the homeowners have commenced action demonstrates that all could do it if

---

> suffered any ascertainable loss by reason of the use or employment of such unlawful method, act or practice any moneys or property, real or personal, which may have been acquired by means of such method, act, or practice. If the court finds that a person has employed any method, act or practice which he knew or should have known to be in violation of said section two, the court may require such person to pay to the commonwealth a civil penalty of not more than five thousand dollars for each such violation and also may require the said person to pay the reasonable costs of investigation and litigation of such violation, including reasonable attorneys' fees....

[4]M.G.L.A. 12 § 10 provides in relevant part:

> He shall take cognizance of all violations of law or of orders of courts, tribunals or commissions affecting the general welfare of the people, including combinations, agreements and unlawful practices in restraint of trade or for the suppression of competition, or for the undue enhancement of the price of articles or commodities in common use, and shall institute or cause to be instituted such criminal or civil proceedings before the appropriate state and federal courts, tribunals and commissions as he may deem to be for the public interest, and shall investigate all matters in which he has reason to believe that there have been such violations....

they were so inclined ignores both the economic realities and the fact that this is precisely the type of case which Massachusetts legislature expected the Attorney General to pursue on behalf of the public.

Public policy dictates that the Commonwealth, through the Attorney General, have standing as set in *In re DeFelice*, 77 B.R. 376 (Bankr. D. Conn. 1987).  As that court and the parties herein noted "bankruptcy court is not to be used as 'a haven for wrongdoers.'" Moreover "Congress did not intend for bankruptcy laws to abrogate the States' police powers." ... Indeed, bankruptcy and state law are accommodated by a judicially created concept granting deference to state policies that do not conflict with federal law." *Id.* at 378 (internal citations omitted). Recognizing that New York's consumer protection statutes authorized the New York Attorney General to seek, among other things, restitution for injured consumers, the court concluded it would be a futile effort if those debts could be discharged by denying standing to the Attorney General.  Although under the New York statute at issue, only the Attorney General could pursue the consumer protection violation, this Court has already determined that Massachusetts is not required to show such a roadblock exists for individual consumers in order for the Commonwealth to have standing.  *See also In re Taibbi*, 213 B.R. 261 (Bankr. E.D.N.Y. 1997) (Court noted that consumer protection law at issue did not appear to create private right of action).

Finally the Court recognizes that Fed. R. Bankr. P. 2018(b) permits the Attorney General to "appear and be heard on behalf of consumer creditors in a chapter 7, 11, 12, or 13 case if the court determines the appearance is in the public interest...."  It would be odd to say the least to allow such appearance in a case but not in a proceeding such as the instant one.  The Court

concludes that this is just such an instance where the public interest is best served by the Attorney General's appearance and participation in these proceedings.

    A separate order shall issue.

Dated: April 13, 2009

                                                                                                           Joel B. Rosenthal
                                                                                                          United States Bankruptcy Judge